A1A Burrito Works, Inc. v. Sysco Jacksonville, Inc. Good morning, Your Honors, and may it please the Court, I'm Brian Harrington for the Restaurants, and I've reserved three minutes for rebuttal. A business contracts with Sysco to buy 40-pound packages of chicken products. If Sysco fails to deliver 40-pound packages, but instead delivers many underweight packages, what is that business supposed to do to recoup its damages? Well, the District Court said you can't sue, that's for sure, because you retail-level plaintiff can't plausibly plead a claim that is preempted, that is not preempted, unless you plead at the time of filing the complaint without the benefit of any discovery that you have performed all the testing and followed all of the procedures contained in the handbook, which governs Sysco, not retail plaintiffs. Couldn't your complaint have, or couldn't your party have weighed, say, the entire shipment that they received? Couldn't you have done more to get at least closer to dealing with what the federal regulations require? No, Your Honor, because even if we assume that the handbook is relevant to plausibility or to preemption, the handbook contains an individual package requirement, and that's imposed on Sysco, and it states that, it says in Table 2-9 of the handbook, that for a 40-pound package, that package cannot vary from 40 pounds by more than 1% or 0.4 pounds. That's called the Maximum Allowable Variation, or MAV. And so whether we had alleged random sampling or testing at other levels in the distribution chain, none of that matters because we have met the standard, assuming the handbook applies, of the individual package requirement. We identified 17 underweight packages from three different locations over a period of We pled that our retail-level testing was consistent in all material aspects with the handbook. We pled in Paragraph 8 that the State Inspector's findings that certain packages were underweight confirmed the accuracy of our testing methods. We set out, when we identified the 17 different packages, we also stated that this was, for example, this was a 14-pound package. It weighed 36 pounds, and therefore it is 10 times the maximum allowed value. We put in the numbers, both in terms, the shortage, both in terms of the percentage and actual weight. The whole point of that was to show that they exceeded the maximum, the MAV. What exactly is your breach of contract claim? Is it that you were ordering 40 pounds and you were not getting 40 pounds, or is it more than that? I'll be honest with you, there's one aspect of it where it refers to a federal statute that doesn't even apply for purposes of weighing, right? Under the representations and warranties aspect of the distribution contract? Yeah, our breach of contract claim has two, there are two, basically two claims. They're based on two different things. One is, this is in Paragraph 70 of our complaint. One is that Cisco delivered to us products that were misbranded because they weighed less than what the label said. But, we also pled in Paragraph 70 that Cisco breached the contract based on this simple proposition. We have contracts with Cisco that are based on a fee per pound. Simply, we pay for an amount of chicken, and they're supposed to deliver that amount. And they didn't do it. And that particular breach of contract claim is not based on reference to any federal regulation, certainly not the handbook. So, if we look at what I call the independent breach of contract claim, the one that's not pointing to a federal statute or regulation, all we had to show or allege is that we have a contract, there was a material breach, and we've been damaged. And we did that. And we did that far and above what is required to plausibly plead that complaint. And unfortunately, the district court completely ignored that part of our breach of contract claim. And the district court only looked at the breach of contract claim that rests on the fact that that were underweight and didn't match what the label said. And so, even if the court were to find federal preemption and that the handbook applies, that still wouldn't mean that the entire case goes away. The breach of contract claim is just based on the simple fact that we have a contract that we paid for more product than Cisco delivered. That should still go forward. Your breach of contract claim on the price per pound, I mean, the key word is pound, right? And so, at some point, you have to make a determination as to how that pound is determined. And you still come back to the handbook, don't you, to make that determination? No, Your Honor. And the reason is the contracts, when discussing the fee per pound and that they'll deliver certain amounts at various prices, doesn't define the term weight or pound by reference to any federal statute or any regulation. So, in other words, basic contract law would mean that we apply the ordinary meaning of words. We contracted for weight. They didn't deliver it. That's a material breach. And so, that's a breach of contract claim. Can you tell me, and you may have already said this, can you tell me where in the contract those terms are? The contract terms are? Right. Is there a specific term that you're saying was breached or is it a broader point? Well, 3.2.2 of the agreements is one provision. And also, the way this works is we have these contracts with Cisco, but then we're invoiced per delivery. And so, we have the agreement that says we're going to pay a fee per pound, and then Cisco will invoice us when they deliver packages. And that invoice will say 40 pounds and here's the cost. Well, our breach of contract claim that doesn't involve federal regulations is we paid for 40 pounds, it's on the invoice, but we were delivered something much less. And if we were to reverse the roles, and let's say that Cisco delivered 40 pounds, but the restaurants just decided we're going to pay you for 36. We're going to underpay you by 13% or 13 times what the variations require. Cisco would most definitely sue us and most definitely they would not be arguing any federal preemption and I doubt that a court would find preemption because we were just not abiding by the contract. We weren't paying for what we got. And so, the inverse is true. If we pay more than what we got, that's a breach of contract, period, and one doesn't need to look at the handbook for that. And I want to stress, Your Honor, that let's just play the order out in very practical terms. Using the standard announced by the district court, on the day that a retail store, retail business like the restaurants, receives a package that is underweight, on that day, in order to protect the business's right to recoup the damages of paying for an underweight package, that store would have to immediately go to Cisco's facilities and say, Open up, I have to do all this testing that is articulated in the handbook. I've got to get into your warehouse. I'm going to do random sampling and average net weight and I'm going to do all these things that are in the handbook. That's not going to happen. We know that's not going to happen. Number one, it's just impossible for a retailer to do that because the retailer has to also do that at the point of pack level and that involves companies or locations that maybe in other states, maybe even be out of the country. But this opinion says that at the time we file the complaint, we must have done all those things. That is simply impossible and it's not hyperbole because the district court, when it was finding our factual allegations insufficient, it said you didn't say that you did this. You didn't say that you did that. You get to, and this is looking forward, but did you get to the jury on a claim without having to look to weighing at the point of pack? How do you prove your case? Yes. We prove our case by showing that we measured these packages and Cisco is, of course, going to want to do discovery to see what that process was, and we go before the jury to see are we telling the truth? Did we accurately do this or was it something like the manager just looked at the box and said something doesn't look right. I'm just going to claim this is underway, which wouldn't be reliable. So to prove our breach of contract claim, we don't have to go do point of pack, which would be impossible again, but that's what's required by this order because it says that's one of the things we didn't do, and because we didn't do it, we didn't plausibly plead our claim, and because we didn't plausibly plead our claim, our claims are preempted. It kind of conflated plausibility with preemption, and it did that based on a handbook that was written for government inspectors to use in compliance testing on manufacturers like Cisco. It was never meant to be a pleading standard for a business to meet in bringing a claim for having paid for underweight packages. I know you've talked a lot about the breach of contract claim, but what about the deceptive trade practice? That is tied to, more closely tied to the federal labeling regulation. Correct, and so there, when we look at the handbook, all we have to plead is that these individual packages were beyond the maximum allowable variations, the MAVs, and we've alleged that. Again, in paragraphs 6 and 7, we gave 17 examples of packages that weighed on orders of magnitude beyond MAVs. I mean, it wasn't even close. One package was 13 times the MAV. So when Cisco says that you're cherry-picking, you would say, well, sure, but each of these cherries that I picked independently shows a violation. Is that right? That's what the district court said. That's what Cisco argues, but as I said when I was describing our facts, we did anything but cherry-pick. Seventeen packages over a 16-month period from three different locations, four of those packages having been tested by the state inspector. That's anything but cherry-picking. How many packages did your client receive over that time period? I don't know the exact number, but it's more than 17. Again, that's not... Is it more than 100, more than 500? More than 100. More than 10,000. I'm not sure about getting up into the higher range, but it is over 100 easily. But again, that doesn't... Your plating is designed, as I see it, to yield an inference that it's a widespread violation based on selecting 17 and testing four by the state, and that supposedly yields an inference that everything they're selling is underweight, basically. Isn't that the gist of your case? Well, the inference... Isn't that what the plating means? The plating means that... When you have 17 and four, it's in there because you want to create the inference that it's widespread. That is correct. Okay. And without that, you flip a coin, don't you? You run into Iqbal problems. I'm sorry, I don't follow. Well, without the inference, you run into Twombly and Iqbal problems on plausibility. Oh, no, Your Honor. On plausibility that it's uniform throughout. No, Your Honor. I respectfully disagree. In fact... Well, then why do you put four samples that the state was involved in and 17 you picked over a period of time? Why put them in there in the complaint at all? Well, because we are saying that there is a problem here with the packages that we're receiving and based on the scope and the time frame and the different locations, there is an inference. But you picked these out and it's not in a scientific study sort of sampling, so you want to draw the inference from those few. Right, which is the only thing that's required of us by Twombly and Iqbal is that we plausibly plead a claim, a claim that's plausible on its face. And I like to refer the court to the speaker decision decided by this court in which on this issue of plausibility stated, a complaint should move forward even if a savvy judge looking at the complaint thinks that the proof of the fact... Well, the judge looked at it more than once in this case. We did... Judge Corrigan said be very careful when you amend. Right. For the following reasons and he explained why. Yes, and we pled what we needed to plead in order to plead a plausible claim for breach of contract just based on the agreements and also based on the federal regulations. I see them over my time. I've just got one more question. Sure. Why don't you need to plead 17 out of X rather than just 17 to lead to a plausible inference of a real problem? Because, again, it's not necessary. I don't know why. If we're talking about just our individual breach of contract claim, it's not... It doesn't matter whether we got 100 packages or 500. We've got underweight packages here that we paid for and we're out money. What's the jurisdiction about? If you only get a few packages, we don't have $75,000 jurisdiction. No, but we... Diversity. Right, but it was removed based on CAFA. Well, we don't have it for CAFA either. Well, if there are 100 members in the... I mean, we pled a class. I understand that, but you only have these 17 pieces of evidence, as it were. Well, this is only at the time we file the complaint without any benefit of discovery. And so based on the proper reading of Iqbal and Speaker, we plausibly allege these underweight packages. And we pled. And again, we're deciding this on a motion to dismiss without any benefit of any discovery. Thank you. We'll let you reserve your time. You're in control of the packages, your clients. We're in control of the packages once we receive them? Yes. Yes, once we... You have all the evidence. Well, product of this nature doesn't store well. Yeah, or store well, whatever. Right. And so, but that doesn't mean the claim goes away because obviously we can testify to how we tested these products and how we weighed them. The state inspector can testify to how he or she weighed them. And I read the district court's effect saying that you cannot draw the inference or inferences that you want drawn from these seventeen packages and four packages that the state inspectors looked at. And that's based on what we claim is the . . . Isn't that the gist of what the court's saying? Yes, because . . . To boil it down. Because the district court relied entirely on the handbook. Well, put the handbook aside. You only had seventeen and four. And you want some inferences drawn from that. Isn't the court in effect saying you can't infer anything from that? Too skimpy. Yes, but the court said that. The possibility is very iffy. Yes, the court said that, but only because it was looking at the handbook. In other words, it said you're cherry-picking because you didn't do average weight testing. That's all in the handbook. I understand. Thank you. You've reserved your time. All right, thank you. Mr. Glick for Cisco. May it please the court, Michael Glick of Kirkland & Ellis on behalf of Cisco Jacksonville Inc. Notwithstanding the express direction from the district court to plead their best case and to use their best judgment to allow the district court to, in its words, address the preemption issue head-on and make a decision based on the allegations in the complaint, the restaurant plaintiffs failed to set forth sufficient allegations that Cisco's poultry deliveries to the restaurants over the course of more than a year violated federal regulations for labeling and weighing poultry. What about the breach of contract claim? I'll start there, and I'll start with the notion that in two and a half years of litigation, the first time that the provision, Section 3.2.2, was invoked was during the oral argument that you just heard. The only provision of the contract that has ever been invoked in this case is the one that Judge Huffaker properly noted is not even at issue here because the poultry at issue in this case is not governed by the FDC Act, and that's the provision in Schedule 3, I think it's Docket Entry 40-1, Section 11.1. If Section 3.2.2 had ever been invoked, we, Cisco, would have had the opportunity to point to other provisions in the contract, including, I believe this is also in the same Schedule 3, Section S.8, that represents that Cisco goes to significant lengths to assure that all product is wholesome and complies with the requirements established by the U.S. Department of Agriculture. And so I think, first of all, there is a substantial waiver issue. If you look at the original complaint filed in state court, if you look at the first amended complaint filed post-removal, if you look at the second amended complaint, this provision 3.2.2 never comes up. I was just even looking here as arguments started about the motion to dismiss briefing. This issue of Section 3.2.2 simply never arises. And to use Mr. Harrington's analogy, I think he tried to say a flip it. Well, what if we refuse to pay? Well, what if, because there are reasonable variations recognized in federal law here, if we had provided 41 pounds of poultry to his client and then said, hey, we want to be paid for 41 pounds, not just 40, he would have had every right to say, no, the federal regulations allow for reasonable variations. So I think the contract claim here is either waived as to the sections that were never identified in any pleading, or they are inapplicable here for the reasons that we stated in our briefing that the FDC Act just doesn't apply to poultry like this. So how, I understand that you think that these plaintiffs have not pleaded a claim on the other side of things. Do you think that any, any buyer could plead a claim of a violation of the federal regulations? Is that even possible? I certainly think they could, and I think Chief Judge Corrigan in his adoption of the R&R recognized that potentially on other facts they certainly could. How would they? Because his point is well taken that Cisco would not respond well to a restaurant owner showing up and asking to perform weight measurements at the plant, right? So how do they do what it seems that you're saying should be required? Well, so I think under Iqbal and Twombly they need to nudge their case from just conceivable or theoretical or hypothetical to actually plausible, okay? And so they focused on argument today and in their briefing on the, what we refer to as the retail testing suggestion in the NIST handbook which is incorporated in Section 442A of the federal regulations. So there's been various references to whether the handbook applies. I think it's very clear the handbook applies. It went through notice and comment. There's a specific edition of the handbook. It does apply. They have focused on the retail testing and said, well, that's impossible. But doesn't the handbook contemplate retail testing? And it says testing at retail can be indicative of a problem at the production end which would be somewhat circumstantial evidence that gives plausibility to their allegations that there's problems at the point of impact. Well, I think their notion about the retail testing being impossible in this case is a little rich and ironic given that they say, well, we didn't have any control over that. Well, what about the elements that they did have control over, right? The NIST handbook very clearly calls for random sampling. It calls for a collection of lots. We don't say we're just gonna cherry pick or pick a few packages over the course of, again, more than a year and hold them to that standard. Those are elements that they clearly controlled, right? What about the maximum allowable variation point? Well, so they, again, if you look at the complaint, they don't allege that either. All they allege in the complaint is that they considered the maximum allowable variation point. But I would note that that maximum allowable variation depends on the number of packages that are being given here. And so I think, Judge Grant, your question's very properly noted that the plaintiffs here never alleged, given multiple opportunities, they never alleged any sort of denominator, right? They don't allege the number of packages they received. They don't allege the number of packages they weighed. They don't identify how they weighed the certain packages. They don't allege any sort of random sampling. They don't allege any sort of averaging. So was it 13, and I should just be clear, it was 13 plus the four from the Florida Inspector, not 17 plus four. So they don't ever allege, was it 13 out of 15, 13 out of 1,500, 13 out of 2,500? And without knowing that, they haven't done anything to nudge themselves from... We don't know if they're in the same point in time. I'm sorry, Your Honor? They're scattered over time, as I understand it. Well, they were scattered over time, but I think that only helps us, not them, because it increases the number of packages. We know from the record here that there are dates on which that they received, for instance, eight packages, and they only cite to two. And I think that the proper inference was the one drawn by Magistrate Judge Toomey here, that there's a reason that those other ones weren't alleged. Again, those are items... Although there's a denominator, right? If they received eight packages and two of them were underweight, doesn't that show that a quarter of the packages were underweight? Yes, but the federal regulations allow for that sort of leeway. I mean, these are chicken thighs, right? It's not like we're having a company that manufactures flour and is filling up to, you know, so it's 16.000 ounces. No two chickens are the exact same weight. So the federal regulations properly, and they recognize in the regulations themselves, there will be reasonable variations and unavoidable deviations based on good manufacturing practices. So it could be that if they got two underweight on that set of eight, they got six that are overweight, and on the whole, they are sort of made whole. Wouldn't it matter, even in that hypo, given what I understand about the maximum allowable variation, wouldn't it still be a violation if, say, two of the packs had 25 and the rest of the packs had 45 and so they came out ahead or even? I think you'd need to know more than they have provided here. And again, Chief Judge Corrigan demanded, instructed them to do so. This is information that was purely within their knowledge, and they didn't even go there. So I think you could set the retail testing aside. This was, I mean, it was far from the only ground that the district court ruled upon. Would they have been better off just not talking about how they weighed the chicken to begin with for purposes of their complaint? I don't think they could have done that. As we cite in our brief, I think we cited eight cases where unless you have alleged that the violation that you are claiming is one that complies with the federal protocol, we cited Webb and I think seven district court cases and I would note that there was another one that we noted in preparing for oral argument, the Shebe case handed down by the Southern District of California last month. They can't, if they want to allege a violation in an area like this that's highly federally regulated, they need to affirmatively plead compliance with the federal standards. Let's talk hypotheticals. Let's say they opened up 17 boxes and they were empty. And common sense says there's no need to weigh it at retail or at the point of pack, it would fail. Would that claim be preempted and therefore be unable to surpass the motion to dismiss stage? I think that would suggest, to go to Judge Choflat's answer, our questions from earlier, that would suggest a more plausible violation here. The problem is they have really given the court very, very little to go on. Based on information, again, that was purely in their possession and in their knowledge. So you need to... They were instructed to do so. There were three complaints here, and they simply failed to do so at every turn. Before I sit, I just wanted to, again, point the court just to the nature of the handbook and why it matters is 9 CFR 442.2a said it's not a suggestion that this is a handbook that's just a suggestion or just doesn't apply. It is a handbook that was enacted in 2005, signed by the Secretary of Commerce, and then subject to notice in rulemaking in 2006 and 2007 and expressly incorporated into this regulation. It says the reasonable variations allowed and the definitions and the procedures to be used in determining net weight are presented in the handbook. So it says to be used. I understand it doesn't say shall, it doesn't say must, but we think the language is very, very clear. I want to be clear about something else. Is it your position that some plaintiff could plausibly plead a case, some other case, based only on retail testing? I think if they had done stuff like averaging, alleging how many packages they received, when they received them, how they identified the particular packages that they had to do so, they certainly could have done so. And I think, frankly, both judges of the district court, Magistrate Judge Toomey and Chief Judge Corrigan, suggested that it's possible. What happened here was just simply a mismatch between what the federal requirements require and what they actually pled that they did. And so, and I think this is in footnote 2 of the district court's decision, they identified all sorts of things that, again, Chief Judge Corrigan invited them to do and that they opted not to do. And it says, you know, despite having three chances to plead their claims, plaintiffs failed to include sufficient allegations to reasonably infer. And they talk about the number of packages received during the relevant time, how the underweight packages were selected, whether other packages were weighed, and how, and other infirmities. And so, again, this is all information they could have pled. And I want to just make one thing clear, because I think, I don't know if this was in the briefing here or in the objection to the magistrate judge's report and recommendation, there was some suggestion of, well, the district court said, I don't want a 300-page complaint. That was in a different section of Chief Judge Corrigan's sort of colloquy two years ago at the hearing downstairs. That comment was with respect to what was at the time our Rule 9b argument on the Deceptive Trade Practices Act claim. As it related to the preemption argument, he made clear the web case from the Ninth Circuit, Judge Van Dyck had just come down about two weeks before the argument, and he made clear in his words that the preemption issue was a serious issue. And he said, give me your best case. Use your best judgment to plead for me so I can determine under the federal regulations whether there is a preemption issue here. And in response to that, as it relates to the weighing procedures that were used, the plaintiffs in this case used a whole sum of one paragraph in a 25-page complaint, so I'd suggest far different between 25 and 300, but one paragraph to describe the weighing procedures that they undertook. And I would note that they did so in wholly conclusory fashion, basically saying, we complied in all material respects with the handbook. Well, again, they never even identify in their complaint what the material aspects that they contend that they complied with were. And the other thing, the R&R I'm looking at says, one of the headings is, plaintiffs' allegations are insufficient because they stop at the retail level of testing. It seems different than what you've, I think, conceded. I will grant you that that heading does appear, but if you look at the analysis under that, and I'm looking at page 7, that's page 180 of Appendix 2, it continues that the second amended complaint demonstrates that plaintiffs' process, regardless of where it took place, right, the process is materially different than that governing Cisco. For example, plaintiff did not follow or follow different requirements regarding inspection lots, random sampling, and evaluating averages. In effect, plaintiffs are comparing apples and oranges. So we would submit that I understand that that's the heading, but really the analysis does go beyond, far beyond, we think, just the lack of retail testing in a case like this. Do you think it's possible to plead a complaint based, not that they did it, but based only on maximum allowable variation? Can that be an independent claim, or does it have to depend on the total amount of a package, of a set of packages? I think that the district court was charged with determining whether or not this complaint, again, nudged from conceivable to plausible, and they failed to provide enough information. Not this complaint, any complaint. Understood. I think that, is there a world in which, based on that and that alone, it's possible, but I think you'd have to allege other aspects of the testing procedure and the weighing procedure that were undertaken to determine whether or not there would be a plausible violation under the federal statute. And they just haven't done that here. I think the federal statute is very clear that, and it says so, I think that the best instruction was in the Kraft Foods case from 2003 from the SDNY, where they explicitly determined that, implicitly, the regulations, quote, acknowledge that some packages may contain less than the weight stated on the label. And as the court there observed, where you don't look at a large enough sample, and again, there's no allegation that they did look at any sort of sample beyond the ones that they, they admit they received some, but then only cite some, and you focus just on a small number of packages, you're not allowing for that reasonable variation that is expressly contemplated under the law. Let's say that they had five 40-pound packages that were labeled as 40 pounds, each of which had one chicken wing. Would that be a plausible violation? I think it would be a plausible violation that one is just not present here, yes. I think that you need to allege facts that would show that if tested under the federal requirements, you would not meet it. Empty boxes of chicken, boxes with just one chicken wing, I think your hypothetical was, might nudge you over that line. There's just nothing like that in the complaint that would do so. Thank you, Your Honor. Thank you very much. Mr. Harrington, you've got three minutes. Thank you, Your Honor. Here's why the handbook is not a pleading standard. Cisco's arguments are basically a reiteration of the district court's order. If the restaurant is sitting there with a package that is not 40 pounds, it is several pounds less than 40 pounds. If the business, the restaurant, then decides, I'm going to do some rambling, some random sampling, is that going to make that 40-pound box fill up? No. If we start trying to do some averaging method per the handbook, is that going to fill up the 40-pound box? No. None of those procedures will answer the question, is this box 40 pounds or is it not? That is why the only apples to oranges comparison in this case is the district court's use of the handbook to apply to a retail plaintiff who is simply trying to get what they pay for. Cisco also talks about the insufficiency of your allegations. We didn't do random sampling. We didn't test at the wholesale level. All of that runs. The problem with all of that is they all fail because of the individual package requirement. This is assuming the handbook does apply. No matter whether random sampling is done, averaging is done, wholesale testing is done, point and pack, if the individual package weighs outside of the MAV, then it doesn't matter whether Cisco passed the inspection or random sampling or whatnot. Can you point me to where in your complaint you make allegations that depend only on the weights of these individual packages? Where you state a claim. Paragraph 70 is our breach of contract that is just based on the simple fact that we have a contract. And Cisco opposing counsel cherry-picked one provision. There is a provision in the contract that says we will not deliver a package to you that is misbranded. But that's not the only provision there. There are other provisions, as I've already cited, that say we'll pay this amount for this amount of product. And so we didn't get that amount of product. That's a breach of the contract. How do you get to, and this is a CAFA case, and you're talking like it's not a CAFA case in a way when you're talking about an individual box of chicken and whether it has 40 pounds or not. How do you extrapolate what may have happened with one box or 17 on your end to a class-wide problem without looking at the handbook and the weighing regulations? Well, because at the motion to dismiss stage, where we are, without the benefit of discovery, we've alleged, that's why I went into detail about the packages that we weighed, about how there were 17 of them done by us and by the inspector at various locations, three different locations, over a period of 16 months, is we're showing this is not a one-off. Is this what you're alleging, that without discovery, you can't do a better job of pleading? Well, right, because there's no, well... I mean... We pledge... Strip down to bare bones, is what you're saying is without discovery, we can't do better. We certainly can't say that we've conducted wholesale-level testing or point-of-pack testing. We can't do those things without having access to their facilities. But I again come back to the fact that we don't have to do those things because no matter what other aspect of the handbook you use, the bottom line is, for an individual package, an individual 40-pound package, it cannot be... It can't be shorted by 1% or 0.4 pounds. And we certainly alleged the MAB violations in paragraph 6. Cisco argued that we didn't. But in paragraph 6, we detailed every one of those packages. We expressed the shortage both in terms of a percentage and the actual weight, which is exactly how table 2-9 of the handbook expresses it for maximum allowed variation. I'm out of time, and unless the court has something further, I'll rest. Thank you. We appreciate your arguments. We are adjourned until tomorrow morning. All rise.